## W. H. TRIBETTE *v.* ILLINOIS CENTRAL RAILROAD CO.

1. PEREMPTORY INSTRUCTION. *When refused. Facts assumed.*

   In granting a peremptory instruction, the court assumes as true all testimony tending to establish the issue in favor of the losing party. Such instruction should not be given where the evidence, in any view of it which may be legally taken, is sufficient to warrant a verdict for such party.

2. RAILROADS. *Fires. Negligence. Circumstantial evidence.*

   In an action against a railroad for burning buildings, where it is shown that an hour before the fire was discovered a passenger-train passed, shortly afterward followed by a freight-train, the locomotives stopping at a point from which a strong wind blew towards an open cotton platform sixty or seventy-five feet away; that the odor of burning cotton was detected by persons two hundred yards distant in the path of the wind, and in a few minutes the fire was discovered near the bottom of two bales of cotton on the edge of the platform next the track, having burned a hole into the bales, afterwards spreading to the buildings; that the season was dry, and there was no probable source for a fire of that kind other than the locomotives; that about three miles from the station, the passenger-locomotive on that trip emitted sparks, and ignited grass fifty feet from the track, there is sufficient circumstantial evidence tending to show that the fire was communicated by a spark or coal from one or other of the locomotives, and a peremptory instruction for defendant is improper.

3. SAME. *Evidence. Equipment of engines. Question of fact.*

   In such case, testimony by a witness that just before the fire, in open daylight, and at a distance of one hundred yards, he had seen one of the locomotives, before reaching the station, emitting sparks which set fire to grass fifty feet from the track, is competent, as tending to contradict a showing by the defendant that the locomotives were in good order, well equipped and carefully handled, and, in view of such testimony, ·it is improper to instruct for the defendant.

4. SAME. *Storing cotton, whether dangerous. Evidence. Opinions.*

   Testimony by a witness that he had previously warned the station-agent of the danger of fire to adjacent buildings from the accumulation of cotton, is incompetent, as involving the mere opinion of the witness, and as not relating to the conditions existing at the time of the fire. Whether

the accumulation and disposition of the cotton was dangerous, is a question of fact, to be established like any other fact.

5. RAILROADS.  *Fires.  Evidence of other fires.  Different engines.*

Plaintiff having shown with reasonable certainty that one of two locomotives communicated the fire, it is immaterial that it cannot be proved which of them did so.  But inquiry should be confined to the equipment and management of the two locomotives, and evidence that at other times other engines had emitted sparks is incompetent.  *Railroad Co.* v. *Miller*, 40 Miss., 45.

6. SAME.  *Negligence.  Storing of cotton.  Provision against fire.*

The fact that the railroad company allowed one hundred and sixty-eight bales of cotton to remain stored on its platform on Sunday was not negligence, it appearing that this was not an unusual accumulation at that season, and that about half the cotton had been delivered the day before for shipment.  Nor was it negligence to fail, during an unprecedented dry season, to provide tarpaulins for the cotton, or special appliances for extinguishing fires, it appearing that the company was following the usual custom of the country, which was known to its customers, and that these precautions had not before been thought necessary.

7. SAME.  *Fires.  Danger to adjacent property.  Storage of cotton.*

The rule which requires a railroad company to guard against danger of fire to adjacent property by removing grass or other inflammable material from its tracks and right of way, does not apply where the danger arises from cotton stored in the usual way on its platform near its tracks, and which it is under a duty to receive.

8. SAME.  *Extreme drought.  Providing against fires.*

Under the facts of this case, it is held that the defendant was not required, because of an unprecedented drought, to use tarpaulins or make other extraordinary provision against fire liable to be communicated to cotton stored on its platforms in the usual course; nor in failing to keep appliances for the extinguishment of fires thus liable to occur.

9. INSTRUCTION.  *Preponderance of evidence.  Satisfying jury.*

An instruction that requires a jury to act on a preponderance of the evidence, without regard to whether it satisfies the mind, is objectionable.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

The facts illustrating the main question passed on by the court are sufficiently stated in the opinion.   The evidence of

the witnesses, Fitzhugh, Downing and Hester, the admission of which is held to be error, was to the effect that at various occasions about the time of the fire they had seen sparks emitted from engines of the defendant, which flew over adjacent buildings. The engines were not shown to be either of those in controversy here.

One Covington, a witness for plaintiff, was permitted, over defendant's objection, to testify that about three or four o'clock in the afternoon of the day the fire occurred an engine on defendant's railroad, running by his farm a mile north of Terry, had set fire to grass on or near the track. The witness could not identify the engine as either of those in controversy, or even definitely fix the hour when he first discovered the fire spreading out from the track of the railroad.

The sixth instruction for plaintiff, which this court holds is open to criticism, is as follows : " The jury will decide the case from the preponderance of the evidence before them, and are not required to believe any facts beyond a reasonable doubt."

*Calhoon & Green,* for appellant.

There was no error of law in the first trial, and the verdict of the jury settled two questions of fact : (1) That the cotton was ignited by sparks from one of defendant's engines, and (2) that the defendant had not met the burden of showing that it was free from negligence in reference to equipment and management of its engines. The question as to the company's negligence in leaving so much cotton stored on its platform was excluded from the consideration of the jury. It is therefore immaterial whether it was right or wrong to admit the testimony of Dr. Jones. But this evidence was admissible to show that the company had notice that the cotton was a menace to the town. Plaintiff could not foresee but that the defendant might take the position that it was not within ordinary contemplation that the burning of the cotton might destroy the town. It was compe-

tent to show that this danger was brought within the contemplation of the parties.

It is well settled that railroad companies must use the ordinary care of an expert railroad man in keeping its right of way clear of combustible materials. 6 Mont., 580. And they cannot shield themselves behind the facts of very dry weather and high winds. They must provide for such contingencies. 8 Am. & Eng. Enc. of L., 12–14. It is gross negligence to have inflammable materials on the right of way. 75 Va., 499; 110 Ind., 538; 66 Wis., 161; 2 Shearm. & Redf. on Neg., 678; Ray on Neg. of Imposed Duties, 151.

It devolved on the company to show that it had good locomotives, of approved pattern, in good condition at the time, and were managed by competent operatives and with proper care. *Insurance Co.* v. *Railway Co.*, 70 Miss., 119. It must have the best and most approved appliances, and must employ competent and skillful servants. 8 Am. & Eng. Enc. L., 5. The proof failed to show any of these requisites. There was no pretense of showing that it had the best and most approved appliances, and that they were operated with due care under the circumstances, and by competent and skillful servants.

It was not necessary for plaintiff to show what particular engine started the fire. It was sufficient to show that some engine of defendant did so, and this may be shown by circumstantial evidence. 9 Nev., 271; 91 U. S., 454. It may be shown that defendant's engines emitted sparks causing fires both before and after the fire. 131 Mass., 469; 79 Pa. St., 405; 93 *Ib.*, 449; 144 *Ib.*, 461; 6 Mont., 581; 58 Wis., 335; 7 Heis., 451; 2 Shearm. & Redf. on Neg., §§ 674, 675. The evidence of other fires was entirely competent in chief, especially as plaintiff showed there was no other apparent cause for fire. It was clearly admissible by anticipation to show imperfect and unsafe locomotives.

The first verdict should stand, on the ground that the railroad company is liable, however the fire may have originated

on their platform.   It was negligence *per se* to have it there, unprotected by guards, tarpaulins, or otherwise, and with no appliances at hand for the extinguishment of fires.   The question of storage at public stations is one of grave public concern.   The danger from accumulation of cotton at these stations is so menacing that, on the application of town authorities, the courts should abate them as nuisances.   *Green* v. *Lake*, 60 Miss., 451.   Even if thoughtless boys set the cotton afire, it is plain that the cotton was a standing invitation to boys to play on it.   The company would be liable for loss of the cotton, if burned while on an open, unprotected platform.   The same rule should be applied that is applied to inflammables in process of transportation.   Liability has been enforced in the case of a hay-stack liable to spontaneous combustion.   2 Shearm. & Redf. on Neg., 531, note 2 and cases there cited; and so in the case of gunpowder.   There is no difference between these instances and the case at bar. 54 Am. Rep., 547; 46 Ark., 207; 52 *Ib.*, 402.   Where inflammable substances are burned on a railroad company's right of way, causing loss to others, it is no defense that the engines were skillfully handled.   2 Thomp. on Neg., 1087; Wood on Nuisances, § 142; 106 Mass., 458; 93 Ind., 452; 13 Broom, 189; 46 Pa. St., 192.   We call special attention to *Marine Insurance Co.* v. *Railroad Co.*, 41 Fed. Rep., 643. See, also, 1 Suth. on Dam., 51; 3 *Ib.*, 2270; Cooley on Torts, 670; 39 N. J. L., 299; 74 N. C., 377; 40 Cal., 14; 67 Tex., 685; 59 Mich., 440; 110 Ind., 538.

It was competent to show that other fires were set by the same engine on the same day.   Shearm. & Redf. on Neg., § 333; Redf. on Railways, 453; 139 U. S., 223; 56 Barb., 72; 62 Me., 240.

Whether the storage of the cotton was a public or private nuisance, we regard it clear that the defendant was liable, and that regardless of how the fire started.   But if the question be viewed as one of fact for the jury, the evidence overwhelmingly establishes that the company was

guilty of negligence. Whether its engines were properly equipped or not was a question of fact that must be deemed settled against it by the verdict. It is conceded that all engines throw more or less sparks. It was therefore the duty of the company, in view of the circumstances here, to take special care to prevent the communication of sparks to the cotton.

That the court erred in granting the peremptory instruction on the last trial, must appear from the argument and authorities cited above. The error in taking the case from the jury seems too patent to require argument.

*Williamson & Potter,* on the same side,

Filed a lengthy brief and written argument devoted mainly to a discussion of the evidence, to show that the fire was communicated from one to the other of defendant's locomotives, and that the facts and circumstances show negligence on the part of the defendant and in the character, equipment and handling of said engines.

On the points of law passed on by the court, counsel made the following points : It was error to exclude the testimony of Covington as to the setting fire to grass on the right of way just before the train reached Terry. 29 Minn., 12; 58 Wis., 335; 80 Mo., 573; 93 Pa. St., 449; 13 Mass., 469; 8 Am. & Eng. Enc. L., 9; 29 Kan., 654. The testimony, in any view, was competent to rebut the attempted showing by defendant that the engines were well equipped and were carefully handled. The evidence on the last trial was substantially the same as on the first. If it was proper for the case to go to the jury on the first trial, it was error to grant the peremptory instruction on the second. In any view, it was error, because the court had no authority to find the facts from the contradictory evidence.

We insist that the first verdict should be re-instated. The testimony of Dr. Jones, that he warned the station agent of the danger of fire from accumulating cotton, was competent.

He merely warned him of the danger, which did exist as shown by the proof. The fire did actually occur. The law required defendant to be careful of danger. How, then, can it be prejudiced by the fact that a citizen or the mayor of the town warned the agent of the very danger the company was required to guard against.

As to the competency of Jones, Covington and Harvey as to other fires, see, in addition to the authorities above cited, 7 Heis., 451; Redf. on Railways, 453; 139 U. S., 223; 82 Ala., 105; 46 Pa. St., 192; 62 Me., 240; Shearm. & Redf. on Neg., § 674, 675. See also, as to the competency of the testimony of Downing, Fitzhugh and Hester as to other fires at Terry, and at the very place where this fire occurred, and within a week of the time, 58 Wis., 395; 93 Pa. St., 449; 7 S. E. Rep., 236. That the season was dry and the weather windy, increased the danger of fires, and greater care should have been exercised. Whart. on Neg., 865; 41 Ind., 228; Whittaker's Smith on Neg., 70. It is gross negligence to have inflammable material on the right of way, or on the platforms owned and controlled by the company, dangerously near the right of way and exposed. 75 Va., 499; 66 Wis., 161; 2 Shearm. & Redf. on Neg., 678; Ray on Neg. of Imposed Duties, 151. The foregoing authorities hold that other fires set by other locomotives of the defendant may be given in evidence. The burden devolved on defendant, by our statute, of showing a want of negligence—that is, that its locomotives were handled in a careful manner—must be met by direct evidence. Evidence of usage is not sufficient. 39 Ind., 251; 21 Minn., 61; 8 Am. & Eng. Enc. L., 5, 10; 2 Rorer on Railroads, 795; Cooley on Torts, 703. It is no answer for the defendant, after negligently destroying the property of others, to say that it followed its usual custom.

Failure to protect the cotton from fire, or to provide for extinguishing fires, was in itself negligence. 2 Thomp. on Neg., 1087; 46 Pa. St., 192; 80 N. Y., 579; 48 Ark., 542; 11 Kan., 47; 59 Mich., 440.

*Brame & Alexander*, on the same side,

Filed a brief devoted almost exclusively to a discussion of the evidence, contending that the case was improperly taken from the jury; that it presented a pure and unmixed question of fact as to whether the defendant caused the fire and whether it resulted from its negligence; that the circumstantial evidence in the case points almost conclusively to the fact that the fire originated from sparks of one or the other of the locomotives which had just passed; that there was no other cause suggested for the origin of the fire, and that the exposed condition of the cotton, the dryness of the season, the direction of the wind, the proximity of the engines (which, it is admitted, throw sparks more or less), and the positive testimony as to the manner in which the engines were handled at the time, demonstrate that the fire proceeded from a locomotive of defendant.

The case for plaintiff is much stronger than that of *L., N. O. & T. Ry. Co.* v. *R. R. Co.*, 67 Miss., 399, in which a verdict based on circumstantial evidence was sustained, despite the fact that it was shown that the engine which it was assumed caused the fire was well supplied with equipments to prevent sparks, and that all due diligence was used. The testimony of the little boy, Johnnie Burnett, that the colored boy, Jake Terry, set the cotton on fire, is most improbable. Besides, it is contradicted by Jake, who is fully corroborated by other witnesses. The physical facts in the case are inconsistent with the testimony of Johnnie Burnett, but entirely consist with the testimony of Jake Terry and the theory of the plaintiff.

There was no error in admitting the testimony of Dr. Jones, because (1) it was competent for him to call attention of the agent to the dangerous condition there existing. If this was a matter of common knowledge, and was known to the agent and others, no harm was done by it. (2) If the facts were not apparent, and the danger was not known, it was proper to warn the defendant. (3) The evidence was

competent, as showing that the defendant had notice. If, as contended by opposite counsel, there was danger that the jury should be prejudiced in some view of this evidence, this was not an objection to the testimony, but the defendant should have asked an instruction to prevent the supposed prejudice. *Chism* v. *State*, 70 Miss., 742; *Archer* v. *Helm,. Ib.*, 874. (4) It is apparent from the record that this issue was eliminated from the consideration of the jury by the instructions.

The testimony of Downing, Hester and Fitzhugh, that defendant's locomotives were in the habit of throwing sparks,. was admissible, because (1) it was competent to show a negligent habit of the defendant, as a part of the circumstantial evidence going to prove that the fire was caused by sparks of defendant's locomotives. (2) It was admissible as showing a violation of defendant's own rules, which, as the proof shows, required that great care should be exercised in running engines by cotton platforms during the cotton season. (3) To show that sparks could be thrown by a locomotive a. distance sufficient to reach the cotton in question. There was a direct controversy as to whether they would go that. far. (4) This was not proof of other fires, but only of throwing sparks, and defendant contended for the same thing, not denying that sparks might fall, but admitting that they would, and that it could not be hindered. This is a complete answer to the objection.

Testimony as to other fires along the track north of Terry just before the fire in question, was competent, since it related directly to the two locomotives in question, and comes clearly within the rule laid down by the authorities as to circumstantial evidence in cases of this character.

*Mayes & Harris* and *James Fentress*, for appellee.

Conceding that, under our statute, proof that the fire was. caused by the running of locomotives casts the burden of showing reasonable skill and care on the defendant, we sub--

mit, first, that the plaintiff has not proved that the fire was so caused, and, second, that the defendant, by undisputed evidence, not inconsistent with other proven facts in the case, has shown reasonable skill and care, and therefore it was proper that the court should instruct for the defendant. *Railroad Co.* v. *Packwood,* 59 Miss., 280; *Railway Co.* v. *Smith,* 67 Miss., 15. We concede that the necessary proof may be made by circumstantial evidence, but the facts and the evidence must be such as to form a reasonable basis for a just deduction, not merely a basis for a guess. Shearm. & Redf. on Neg., § 675; *Railroad Co.* v. *Cathey,* 70 Miss., 332; 7 Heis., 451. On the trial, defendant did not repose upon the single fact that the evidence must prove as a fact, and not as a probability, that the defendant set the fire, but it successfully undertook to show to the satisfaction of any reasonable man exactly how the fire did originate. It showed that the lad, Jake Terry, set the fire. Over this showing a conflict arose, and that constituted a large part of the testimony in the record. A failure of the defendant to prove that Terry started the fire, or even positive proof that he did not do so, is not proof that the defendant started it. The burden on the plaintiff was not to exonerate Jake Terry, but to convict the defendant. The controversy over the truthfulness of Jake Terry's testimony could not prevent the court from giving a peremptory instruction, if plaintiff failed to make the proof that defendant's locomotives caused the fire. We submit that a careful examination of the evidence as a whole will show that it is not sufficient, in any view of it which might legally be taken, to warrant the conclusion that the defendant set the fire.

Plaintiff failed to show the absence of any other probable source of communication of the fire. It was necessary for plaintiff to show this affirmatively. On the other hand, the contradictory evidence of the defendant is that neither train emitted any unusual sparks, while plaintiff has proved neither the undue exposure nor the absence of other probable cause,

nor the emission of sparks causing the damage. See 81 Tex., 382, 394.

We submit that the evidence fully establishes reasonable care and skill on the part of defendant's servants; that the engines were in good order, and were properly equipped with spark arresters; that the engines were properly and carefully managed; that there was no negligence or mismanagement of the cotton platform or of the cotton thereon. It was shown that it is impossible to so equip an engine that no sparks will be emitted; the most that can be done is to prevent the escape of large sparks or coals. The bare fact that dry grass and stubble on the line of the road were ignited, is not, of itself, evidence of negligence in respect to the condition or management of the engines, nor evidence from which a jury would be justified in finding negligence. 93 Pa. St., 449. In support of the proposition that the defendant has shown reasonable care, see 55 Wis., 106.

In respect to the accumulation of cotton, there is a difference between the measure of due diligence in shipments as between the company and the shipper and that as between the company and the adjoining property owner. It is none of the business of the latter how much the company allows freight, inflammable or otherwise, to accumulate about its depot. The company is under no duty as to him in respect to shipments. But the evidence itself shows conclusively that there was no undue accumulation of cotton. The fire occurred in the busiest cotton season in 1891, in which the largest cotton crop in the history of the world was produced. The fire occurred on Sunday. About half of the cotton had been received the day before, and empty cars had been put along the side of the platform, and partially loaded. It was not the company's custom to load cotton on Sunday, and, that being *dies non*, it cannot be said that more than half the cotton had been there more than one day. The company was not bound to run its business with special reference to the adjoining properties. *Home Ins. Co.* v. *Railway Co.*, 70 Miss.,

119, 140. The same rule should apply in respect to the method of handling cotton about its stations. On this subject, see 139 U. S., 223, 236; 55 Ark., 510; *Wharf-boat Association* v. *Wood*, 64 Miss., 661. Even if there had been negligent delay to ship, it cannot be said that the delay was the cause of the fire. 10 Wall., 176; Whittaker's Smith on Neg., 312–318, 420, 421.

It is shown that the citizens of Terry, including this plaintiff, had acquiesced in the use of this platform in the manner in which it was used. They consented to its use for the purpose of accumulating cotton.

It was not negligence to fail to protect the cotton with tarpaulins. This point was made in *L., N. O. & T. Ry.* v. *R. R. Co.*, 67 Miss., 399, and the decision in that case necessarily adjudges that such failure was not negligence, as a careful examination of the case will show.

We submit, also, that it was not negligence to fail to have special appliances for extinguishing the fire. The witnesses. for plaintiff say they do not know whether they could have saved the cotton if they had had water. It cannot be urged that there was, in this respect, any distinct act importing negligence. In all these matters, as well as in putting its box-cars alongside the platform to be loaded, the company was pursuing its usual course of business and conforming to its well-known custom.

We submit that, in making proof of diligence, the company was only required to show this to a reasonable degree of certainty. 30 Wis., 110; 33 *Ib.*, 582; Whart. on Ev., § 1237. This court has settled that, under such circumstances, the court will, for itself, determine what is proper care. The question is not for the jury. *Howard* v. *Railway Co.*, 67 Miss., 247.

The testimony of Downing, Hester and Fitzhugh, that they had seen sparks emitted from other engines of the defendant, which flew over and about the cotton-shed, was not competent, especially where the engines, which it is contended

set the fire, are known. The defendant did not deny that sparks might fly ; on the contrary, proved that this could not be hindered. But, in any view of it, the testimony was incompetent. 40 Miss., 45 ; *Southern R. R. Co.* v. *Kendrick, Ib.*, 374 ; 78 Pa. St., 293 ; 79 *Ib.*, 163 ; 42 N. H., 97 ; 4 Md., 254.

The testimony of Lewis Harvey, that the passenger-engine, while approaching Terry, had set fire to grass in a field, was improperly admitted for any purpose. The evidence was too remote. The ignition in the field was not the *factum probandum*, but the ignition of the cotton at Terry. Now, granting that fires elsewhere, about the same time, caused by the same engine, are competent as probative facts to make out a case of circumstantial evidence, even though the surrounding circumstances are different, yet such fires cannot be proved by circumstantial evidence, but only by direct testimony. 1 Greenl. on Ev., § 13 ; 2 Whart. on Ev., § 1226, note 3 ; 2 Rice on Ev., 766–769.

Harvey does not claim to have witnessed the fact of ignition, but that he saw a train pass, emit sparks and shortly afterwards a fire burning. *Non constat* but that the fire may have originated otherwise than by sparks escaped through the arrester. The whole thing is a matter of inference. We have found no case in which these outside fires have been allowed to be proven by circumstantial evidence. We submit that the utmost extent of the rule is that evidence as to other fires must be positive, and must be confined to the same engine, operated in the same manner and in the same state of repair. 42 N. H., 97 ; 8 Pa. St., 366 ; 4 Md., 251. The evidence of other fires, where introduced to show a defect in a particular engine, can only be used where there is real proof that fires were accompanied by and proceeded from it —the proven emission of cinders of such size and in such quantities as could only have been scattered in the manner proven by the witness. The defense has not denied that even a properly constructed engine may set fire to dry grass.

The evidence of Lewis Harvey was not offered to show a negligent habit in the handling of engines or in their equipment, nor was it offered to rebut proof offered by defendant of a general habit of care or of sufficiency of equipment.

The same argument applies to the testimony of Covington. Moreover, he did not locate the time of the fire, but speaks of it as being from three to four o'clock in the afternoon, which was two or three hours after the fire at Terry started. He did not see the train which he claims started the fire, and did not know in what direction it was running.

The verdict for plaintiff on the first trial was properly set aside. The court had erred in admitting the testimony of Dr. Jones as to the conversation with the station agent, in which Jones notified the agent of the danger to the town from the cotton on the platform. This evidence was incompetent generally. The company should not be charged by a conversation with a mere station agent, in the absence of evidence that it was within the scope of his authority to decline to receive cotton offered for shipment by the public. No duty or right was shown to have existed in Dr. Jones to give such notice. The question of the railroad's duty in regard to the cotton, and the liability and the exposure were matters of law to be passed on by the court, and of common observation and fact to be passed on by the jury, and the conversation was an oblique method of getting in evidence the opinion of the witness. The conversation appeared not to have been about this lot of cotton or reasonably near this time.

The court erred in admitting the testimony of Jones, Covington and Lewis Harvey as to other fires, and also in admitting the testimony of Fitzhugh, Downing and Hester as to the emission of sparks by other engines on other occasions.

The cross-examination of Mr. Terry as to a conversation alleged to have taken place in his presence between Jake Terry and one Conway was wholly incompetent. There was no evidence that Conway had any connection with this case

or was authorized by defendant to catechise Jake Terry or that he was actuated by any thing but the purest curiosity.

The sixth instruction for plaintiff was erroneous in permitting the jury to decide the case on a mere preponderance of the testimony, without reference to whether the preponderance was sufficient to satisfy the mind. *Duncan v. Watson,* 28 Miss., 187.

Argued orally by *S. S. Calhoon* and *L. Brame,* for appellant, and *Edward Mayes,* for appellee.

WOODS, J., delivered the opinion of the court.

This is a suit brought by the appellant for damages resulting from the destruction of buildings of appellant, in the town of Terry, by fire communicated from the burning cotton stored upon appellee's railway platform, the allegation being that the cotton was ignited by sparks thrown out by appellee's locomotive, negligently. The declaration avers with particularity that the appellee negligently permitted the accumulation of a large lot of cotton, in bales, at its depot, on an open platform, with no inclosing walls, and with an inflammable roof of pine boards, with no tarpaulins or other covering for said cotton, and without any means or appliances provided for the extinguishment of fires. It is averred, also, with particularity of statement, that appellee negligently permitted several closed box-cars to stand alongside said platform and cotton, thus preventing the throwing of the cotton from the platform after ignition; but, it is charged, that appellee, on the occasion in question, having an engine present, with capacity to have hauled said box-cars away, and so made practicable the dumping of said cotton on the ground, negligently omitted to remove said cars, and, in fact, refused to do so, because of which, the fire spread over all the cotton there accumulated, and was communicated to appellant's property, which was wholly destroyed thereby.

The general issue was pleaded by the railroad company,

and on this three trials were had. The first trial resulted in a verdict for appellant, which was set aside by the court on motion of the counsel for appellee. The second hearing ended in a mistrial, the jury being unable to agree. The third trial resulted in a verdict for the railroad company, under a peremptory instruction from the court, and judgment was entered accordingly. From this action of the court below plaintiff appeals, seeking a reversal of the last judgment, and the re-instatement of the first verdict.

The peremptory charge was not erroneous, if there was no evidence "to warrant a verdict for the plaintiff in any view of it which might be legally taken." In other words, if there was no evidence reasonably tending to establish plaintiff's contention, the peremptory charge was correct. If there was such evidence, then the charge was incorrect. The solution of the question presented will necessitate an examination of the evidence somewhat in detail.

It was incumbent on the appellant to show that the fire was communicated from the engines of the railroad company. This was sought to be done, as it might be, by circumstantial evidence. This evidence was substantially this: A long, protracted drought prevailed, and inflammable substances were susceptible of ready ignition; a strong wind was prevailing at the time of the fire; about an hour before the fire was discovered, a locomotive, pulling a south-bound passenger-train, came in, and was stopped for a minute at, and then started on its way from, a point on the main line from which the wind blew the smoke from the engine directly to the spot where the fire originated; another train, a freight-train, followed the passenger, and went in on a side-track, first stopping to cut a crossing, and then pulling up a short distance, and finally halting near the point where the passenger-locomotive stood, and at a spot where the smoke from its engine also was driven by prevailing winds against the cotton at the point where the fire broke out finally; the odor of burning cotton was perceived ten or fifteen minutes

before the fire was discovered, by persons two hundred yards distant on the west side of the railroad tracks and in the path of the wind; when the fire at length made itself known, it was found to proceed from holes in two bales, in close proximity to each other, in which the fire was, and had been, manifestly, slowly eating its way smoulderingly; the cotton bales were standing on end near the edge of the platform, and in about two feet of the box-cars hereinbefore alluded to; the fire, when first seen, had burned a hole in each of the contiguous bales of the size of a peck-measure, or larger; the holes exhibited a glowing surface when the wind fanned them, and the blaze would, at such fanning, start out and creep up to the top of the bales; these burning holes were six or eight inches from the bottom of the bales, and under one of the lower ties on each bale, and these burning holes were in the adjacent edges of the two bales, and just behind a post resting on the platform and constituting one of the supports of the roof before referred to; the action of the fire was such as characterizes the ignition of cotton from a spark or coal; there was absence of any suggestion of other means of communicating a fire of this character than the railroad's engines; then, anticipating the evidence of the railroad company that its locomotives were properly constructed and equipped and carefully handled, the appellant introduced a witness who testified that about three miles north of Terry, where the fire occurred, and a few minutes only before the passenger-locomotive passed the scene of the conflagration, sparks of such size were emitted from its smoke-stack as to be seen by him at noon on a clear, sunshiny day and at a distance of a hundred yards, and dry grass was thereby fired beyond the railroad's right of way—that is, at a distance of more than fifty feet from the passing engine. It is not disputable that the spot on the platform where the cotton was fired was sixty-five to seventy-five feet from the point where the two locomotives stopped, and from which the passenger-locomotive started on that occasion.

Affirmatively, the appellee undertook to show that a lad, Jake Terry by name, was the originator of the fire. Grant all that the company's evidence on this point showed, or tended to show, and it is valueless notwithstanding. By the defendant's witness it is shown that Jake Terry set fire with a blazing match a few moments only before the alarm was given. The fire was found to have started near the bottom of the bales, and to have been slowly burrowing and eating its way for a very considerable period of time. It was set by, not a blaze, but a spark or coal. Concede the absolute verity of Johnnie Burnett's statement as to Jake Terry's conduct, and still not a ray of light will be turned upon the cause of the fire. We disencumber the case by laying out of view this affirmative defense as absolutely worthless. Fully credited, it affords no help to one seeking the cause of the fire.

Negatively, the appellee showed skill and care in the construction and handling of its engines.

This statement of the evidence will obviate the necessity for any argument on this branch of the case. By circumstances quite clear and convincing, all disinterested minds must agree that, with reasonable certainty, the fire was caused by one or the other of the locomotives at Terry on that day. It does not at all militate against this view that appellant is unable to say which of the two engines was the cause of the fire. It is not of vital importance to establish *what* engine did the work. The essential inquiry is, did *an* engine of appellee cause the conflagration? To this question there can be but one answer, as it appears to us.

This brings us to the other branch of the case involved in the peremptory instruction given for appellee in the court below. And at this point, as has been very properly said by counsel for appellee, the railroad company is first required to speak. It was not required to show that Jake Terry or any one else set out the fire. It was appellant's duty to first establish the agency of one of the locomotives in the catas-

trophe. This having been done, in our opinion, with reasonable certainty, the appellee is now required to take up the burden of meeting the *prima facie* case made out against it. We think it may be fairly said that its evidence as to the construction and equipment of the two locomotives shown to have been in position to have caused the fire, and as to the skill and care of its servants in handling and managing them on that day, meets the requirements imposed upon it. While the mere words employed by the two engineers who then had charge of the locomotives might have been substituted by others more precise and more explicit, yet fairness constrains us to say that, from all the evidence of all the witnesses of appellee, the engines are shown to have been in good order, and with a proper spark arrester each, and were handled with due care. The spark arresters in both smokestacks were examined shortly before and shortly after the fire, and were found in good condition. It is shown by the witnesses for the defendant that all engines emit some sparks when in motion; that an engine capable of performing its required work which does not throw sparks is an impossibility. It is said that all engines throw sparks, and in working must, from their very construction, throw them all the time; but they may emit more or less sparks under varying conditions. The evil cannot be wholly prevented, but it may be, and is in every properly constructed locomotive, reduced to comparative insignificance. With a proper spark arrester and cone, sparks which would otherwise fly out in large volumes and of every size, are rendered almost powerless for hurt. Through the meshes of the arresters nothing but very fine sparks or cinders can escape; they are beaten on the cone and in the arrester, and reduced, before escaping into the air, into minute particles; they are so small as to lose their power of ignition quickly after emerging into the air; they fall harmless in the cab, and, though hot to the touch, have no life in them, and are incapable of igniting substances with which they come in contact; they ordinarily

fall in ten or twenty feet after escaping from the smoke-stack, though, with a strong wind, they might be carried thirty or forty or fifty feet.

This, in brief, is the defense of non-negligence made by the appellee, and if this stood unchallenged, we should not hesitate to affirm the judgment on the last trial; but there is in the record the anticipatory evidence to which we have already alluded. Lewis Harvey testifies to seeing, at high noon, on a clear, sunshiny day, and at a distance of a hundred yards, "plenty of sparks" flying from the engine of the passenger-train, and firing grass beyond the right of way of appellee. That the minute particles of coke, which only can escape through a proper spark arrester, as testified by appellee's witnesses, could have been so seen by Harvey, or that they could have set grass afire at the distance he describes, is incredible. But, in determining the rightfulness of the court's action in charging peremptorily for the appellee, we are bound to assume the absolute credibility of all the evidence of the plaintiff below. The right to withdraw the case from the jury rests upon that very assumption in favor of the plaintiff's evidence. In peremptorily instructing for the defendant below, the learned judge virtually said the absolute verity of Harvey's evidence is to be assumed; but, granting the assumption, it raises no issue—it presents nothing for the jury's determination. But were there disputable facts? Was there only one inference to be drawn from all the evidence? Would all men of reason be shut up to one inevitable conclusion? If not, the case should have been submitted to the jury. Wherever there is any reasonable ground for diversity of opinion, it is the judgment of twelve men which should be called to decide, and not that of one. We cannot shut our eyes to Harvey's evidence. It may, in truth, be of little real worth, but that is not for us to say. We are driven to assume its perfect truth in considering the point now in hand; and, thus assuming, we cannot affirm that it does not discredit, or reasonably tend to discredit, the tes-

timony of the railroad company as to the construction and equipment of the locomotive, and reasonably tend to establish the appellee's negligence in that particular.

It remains now to pass upon the action of the court in setting aside the first verdict.

On the first trial several exceptions were taken by appellee to the rulings of the court upon the introduction of the evidence of several witnesses.

The admission of the evidence of Dr. Jones, in so far as it was sought to show that the witness had notified the station agent of the danger to the town from the accumulating cotton, was error. Whether there was a dangerous and unwarranted accumulation of cotton on the platform was a fact to be proved like any other, and the witness' opinion was not admissible. Whether the defendant was derelict in duty in storing cotton on its platform, and was negligent in such fashion as to impose liability, were questions of law, to be determined by the court, and not at all by the opinion of a witness. And this duty the court performed in virtually withdrawing from the jury the consideration of any supposed negligence springing out of the accumulation of cotton on the platform. There was an utter failure to show negligence in this matter. The transportation of cotton in bales, at certain periods, is the chief business of appellee. The proofs show no undue accumulation—no negligence in storing on the platform. The fire occurred on Sunday, and on that day no cotton was ever shipped. Eighty-five of the one hundred and sixty-eight bales burned were delivered to the railroad late Saturday evening; the remainder had been there so short a time as to preclude thought of any misconduct. This, in effect, was what the court below properly held, in refusing to charge for appellant to the contrary, and any attempt to put the jury in possession of Dr. Jones' opinion was erroneous.

The admission was erroneous, moreover, because the conversation was not in reference to the cotton destroyed, was

some time prior to the fire, and did not touch the conditions existing at the date of the burning.

The evidence of Fitzhugh, Downing and Hester should have been excluded. The controversy was as to the equipment and management of one of two locomotives, and not of others. What was the condition of these engines on the occasion of the fire, was the subject of investigation. What other engines, handled by other drivers, on other occasions, did, could shed no light on the particular inquiry involved. The tendency of such evidence was to confuse and mislead the jury, and prejudice the appellee.

But this would appear to be not an open question in this state. Said Ellett, J., in *Mississippi Central Railroad* v. *Miller*, 40, Miss.: "The witness then proceeded to state that he had often known the cars of defendant to pass over the public road near his house without ringing their bell or blowing their whistle, and that they sometimes went down about dusk without head-lights. Kelly, another witness for plaintiff, was also permitted, after like objection, to testify that he had known trains sometimes to run in the night without head-lights, but he did not know as to this particular train. This evidence was inadmissible. The question at issue was, whether the death of the mule resulted from the want of reasonable and proper care at that particular time, and by the agents in charge of that train. The affirmative of that proposition would not be established by showing that other agents of the defendant, at other times and places, had been guilty of misconduct, or had violated the law regulating the running of their trains."

This principle was recognized and re-affirmed in the subsequent case of *Southern Railroad Co.* v. *Kendrick*, in the same volume of our reports. The same principle is applicable in the present instance. It is founded in sound reason, and is settled by authority with us.

The evidence of Covington should have been excluded likewise. From his testimony, it is more than uncertain

whether either of the locomotives of which we have been speaking, fired his field. It is equally uncertain whether any engine fired it negligently, or by sparks. The fire was spreading out from the tracks, and may just as well be supposed to have been set by a coal or spark from the ash-box, or by a match thrown out by a passenger. In any aspect in which it may be regarded, this evidence should have been wholly excluded.

It may not be unnecessary to say directly what we have said by implication already—that the evidence of Lewis Harvey was properly admitted. It was pertinent on an issue of fact, and that fact was as to the proper equipment of the passenger-engine. It was not an effort to establish the fact to be proved by piling presumption on presumption, as appellee's counsel contend. It was a perfectly legitimate method of showing, by circumstantial evidence, that the spark-arrester of the particular locomotive was not in good condition, and, consequently, that appellee was negligent in using it in its unsafe state.

We are unable to understand why the cross-examination of Terry as to Conway's conversation with Jake Terry, was admitted. Conway was not a witness; he was not a party to the litigation; he seems to have had no interest in the matter. Is the effort made to impute his curiosity to the appellee? This evidence as to Conway was improperly admitted, we think, and may have been prejudicial.

In the rulings of the able court below on the instructions given and refused, we find a single error. The sixth instruction is open to the just criticism of appellee's counsel. It seems to require a decision by the jury on a preponderance of the evidence, even if insufficient to reasonably satisfy the mind. It left no room for the action of the mind unsatisfied by the evidence produced.

It may not be amiss to add that the views of the court below, involved in the refused charges asked by the appellant, seeking to fix liability on the railroad for supposed

negligence in storing cotton on its platform, as it did, and in failing to cover the same with tarpaulins and in not keeping appliances at hand for the extinguishment of fires and in placing the box-cars on the side-track, were altogether correct. There was no such delay in shipping cotton as to excite comment. Eighty-five of the one hundred and eighty-six bales were received less than a day before the fire, and we see no room for the assertion of negligence in accumulating cotton in large and dangerous quantities. The cotton was baled in the customary fashion of the country, and was received, handled and stored in the usual manner. The menace to the town could not have been regarded as serious, we are constrained to believe, seeing that appellant and others had deliberately increased the menace by themselves enlarging the cotton platform at the station, in order that more cotton might be stored than the appellee's platform could hold.

The cases cited by counsel, where liability was imposed for keeping or permitting grass or other inflammable materials on the right of way, whereby fires were set out by coals from the ash-box, or sparks from the engine, and then communicated to fields or houses of adjoining property-holders, are not applicable to the case at bar. It was the duty of the company in those cases to keep the inflammable materials off its track and right of way, because of the almost certainty of dropping fire from the ash-box, or sparks from the same source, as well as from the smoke-stack, in the ordinary and careful handling of locomotives in hauling trains, and so communicating fire to adjoining property. It was the duty of the railroad company to remove these sources of constant danger. But the principle is not to be invoked in the case we are dealing with, for it is the duty of the carrier to receive and store the cotton offered it for shipment. That is one of the ends and aims of the railway's existence.

That an unprecedented dry season required the appellee to procure and use tarpaulins, a thing never before thought

necessary, is not true; and this remark may be applied to the contention as to appellee's supposed negligence in likewise failing to procure and keep appliances for the extinguishment of fires.

There was no negligence in having the box-cars adjacent to the cotton on the platform. They had been placed there for convenient loading of this very cotton on the morrow. It was a natural and proper thing to place them where they were.

The entire case has received repeated and protracted consideration by us, with the result of reversing the judgment obtained under the peremptory instruction of the court, but with no re-instatement of the first verdict.

*Reversed and remanded.*

Cooper, J., specially concurring.

I fully concur in the result reached in this case, but I am unable to perceive that plaintiff has made so strong a showing as that set forth in the opinion of my brother, Woods. I think, upon the case as made, the evidence of the plaintiff would have supported a verdict in his favor, and, this being true, he was entitled to have the decision of a jury on the facts. Beyond this I do not express any opinion.

*Mayes & Harris*, for appellant,

Filed a suggestion of error, reviewing and discussing at great length the facts of the case, contending that the court had erred in its conclusions drawn from the testimony, and especially in announcing views of the evidence unfavorable to appellee, and in commenting on the weight of the same.

*Per curiam*, in response to suggestion of error.

Our view of this case on its former consideration, and now, is, that there is enough evidence on the question of the origin of the fire and the exculpation of the defendant from responsibility for its consequences, if the conclusion shall be reached by the jury that it was produced by sparks from one

of the engines of the defendant, to entitle the plaintiff to have these questions passed on by a jury instead of the judge, and that is what we have decided, and to which we adhere.