LIVERPOOL & LONDON & GLOBE INSURANCE CO. *v.* FARNS-
WORTH LUMBER CO.

1. FIRE INSURANCE.   *Conditions in policy.   Waiver by agent.*

A warranty in a policy of fire insurance that a continuous clear space shall thereafter be kept between the property insured (lumber piled in sheds) and any woodworking establishment, is waived where the insurer's agent, when he accepts the risk and writes the policy, knows that there is not such clear space, that it is impossible for the insurer to maintain such space without removal of his buildings, and that he does not intend to do this.   *Mitchell* v. *Insurance Co.*, *ante*, page 53.

2. SAME.   *Breach of warranty.   Evidence.   Burden of proof.*

The burden is on the insurer to establish a breach of warranty in a policy of insurance.   There is no distinction, in this respect, between life and fire insurance.   *Insurance Co.* v. *Brown*, 57 Miss., 308.

3. INSTRUCTION.   *Satisfying minds of jury.   Degree of certainty.*

An instruction for plaintiff placing on defendant the burden of proof of an affirmative defense, and directing a verdict for plaintiff, unless on the evidence the minds of the jury are not satisfied to a *reasonable degree of certainty*, presents no reversible error.

FROM the circuit court of Jackson county.

HON. S. H. TERRAL, Judge.

Action by Farnsworth Lumber Company against Liverpool & London & Globe Insurance Company on a policy of fire insurance. The property insured is described in the policy as follows: "Pitch pine lumber, dressed and rough, while piled on yards and in lumber sheds of the Farnsworth Lumber Company's mill, situated on the east bank of the Pascagoula river, in Scranton, Mississippi." The policy contained the following, among other clauses: "Warranted by the insured that a continuous clear space of fifty feet shall hereafter be maintained between the property herein insured and any woodworking or manufacturing establishment, and that said space shall not be used for the handling or piling of lumber thereon for temporary purposes, tramways for which lumber is piled alone being excepted. But this shall not be construed to prohibit loading or unloading within, or the transportation of lumber or timber products across, such clear space; it being specially understood and agreed by the assured that any violation of this warranty shall render this policy null and void." In view of the opinion it is not deemed necessary to notice the pleadings and the specific errors assigned to the rulings thereon. The main defense asserted was a breach by the assured of the warranty in the policy above quoted as to the maintenance of a clear space of fifty feet, and the testimony was mainly directed to that issue. There was evidence for the defendant showing that at the time of the fire the lumber insured was piled within less than fifty feet of a planing mill and the shed covering and inclosing it, and also within less than fifty feet of a dry kiln, a shed within which lumber was piled for drying purposes, and in which a fan was operated by steam conducted through pipes leading from the planing mill. There was also some testimony for the defendant tending to show that some of the lumber was piled near the sawmill proper, but it seems that the measurement taken to show this was made, not from the main building, but from an

open platform surrounding it. In behalf of the plaintiff, it was shown that one Morrill, the local agent of the defendant and other insurance companies, solicited from the superintendent of the lumber company insurance on the buildings and lumber, which were already insured in several companies but the policies were about to expire. Morrill visited the mill in person, and, before writing any policy, inspected the mill and sheds and the lumber piles, and made measurements as to the distances. He then wrote the policy in question, and, several weeks later, again visited the mill and lumber yard and wrote two other policies of concurrent insurance on the lumber. At that time a large quantity of the lumber was piled in the shed which inclosed the planing mill, and in another shed just across the railroad track from it, and not fifteen feet away. It was shown that the lumber company had no other sheds in which it piled lumber, and that the words, "and in lumber sheds," appearing in the description of the property insured, were inserted by Morrill at the suggestion of the superintendent, and for the purpose of removing all doubt as to whether the lumber, as then piled in the sheds, was covered by the policy. It was further shown that no objection was made by Morrill as to the manner in which the lumber was piled, and nothing was said, either by him or the superintendent of the lumber company, about moving any of the lumber or the lumber sheds. One of the instructions given for the plaintiff was to the effect that if it was physically impossible to maintain a clear space of fifty feet between the planing mill, the shed and the dry kiln, and that Morrill, when he insured the property, intended to accept the risk, notwithstanding the condition of things as then existing was intended to continue, then the warranty of the policy as to the maintenance of a continuous clear space of fifty feet between the property insured and any woodworking or manufacturing establishment was waived.

By another instruction for plaintiff, the court informed the jury that the burden of proof was on the defendant to show a

breach of said warranty, "and if, upon the evidence, the minds of the jury are not satisfied to a reasonable degree of certainty of that breach, they should find for the plaintiff upon that issue." There was a verdict and judgment for plaintiff, and, after a motion for a new trial overruled, defendant appeals.

*Calhoon & Green*, for appellant.

As the lumber insured was piled in the yards and in sheds, the words "any woodworking or manufacturing establishment" cannot embrace the sheds, as this would result in an absurdity. They must be limited to mean woodworking or manufacturing machines. Applying the language, thus interpreted, to the facts, we find there was a planer in the larger shed, a dry kiln in the yard not fifty feet away from the shed, and the sawmill proper, which was more than fifty feet from the shed. We think the meaning of the condition is that the lumber insured must be piled in the yards and in the sheds, with a continuous clear space between it and the planer and the dry kiln and the sawmill, and these are the woodworking establishments meant by the policy. Contracts of insurance, being neither *mala prohibita* nor *mala in se*, are to be regulated by the same rules that govern in ordinary agreements. *Co-operative Ass'n* v. *Leflore*, 53 Miss., 1. The precise language of this policy was involved in *Shingle Mill Co.* v. *Insurance Co.*, 91 Mich., 441, and was held to be a warranty *in futuro* and not *in præsenti.* A warranty implies the truth of the matter of the covenant, and its materiality is placed beyond controversy by the contract of the parties. *Co-operative Ass'n* v. *Leflore, supra; Jeffries* v. *Insurance Co.*, 22 Wall., 47; 7 Wend., 73. Promissory warranties must be strictly performed. 1 Bid. on Ins., § 566; *Shingle Mill Co.* v. *Insurance Co., supra.* The warranty is *in futuro*, and the then existing location of the lumber, so far from determining the rights of the company, cuts no figure, save that, if contrary to the covenant, it would have to be removed the prescribed distance. If it be true that it was im-

possible to maintain the space between the sheds and between the lumber piled in the planing mill shed and the planer, this would not show there had not been a breach as to the lumber piled in the yards and the other shed. It is unnecessary to cite authorities to show that a covenant of warranty must be performed. *Klyce* v. *Broyles*, 37 Miss., 524; *Kimbrough* v. *Curtis*, *Ib.*, 117.

The burden of proof of breach of warranty is upon the plaintiff. 1 Bid. on Ins., §§ 557, 566; 30 Penn., 315; 22 Wall., 47; *Klyce* v. *Broyles*, *supra;* 2 Saunders on Pl. & Ev., 596, 599; *Winn* v. *Skipwith*, 14 Smed. & M., 14; *Holliday* v. *Cooper*, 1 *Ib.*, 633; *Porter* v. *Still*, 63 Miss., 357. Besides, the plaintiff alleged excuse for nonperformance, and this was in confession and avoidance of the breach, and put the burden on it. 1 Saunders on Pl. & Ev., 127.

The instruction is erroneous in requiring the minds of the jury to be satisfied to a reasonable degree of certainty. What may be a reasonable degree of certainty for one mind may not be for another. Verdicts must rest upon belief of the existence of facts, and not upon satisfaction to a reasonable degree of certainty.

*R. H. Clarke* and *Brame & Alexander*, for appellee.

1. Inasmuch as all the facts touching the main defense presented were brought out, and each party obtained the benefit of all the evidence, the court will not pass *seriatim* upon the rulings on the pleadings. *Insurance Co.* v. *Scales*, 71 Miss., 975. It has come to be characteristic of insurance companies to seek to escape from liability in the mazes of the score or more stipulations of their policies, all of which are for their protection and none for the benefit of the insured, and, that failing, in a labyrinth of special pleadings.

It is indisputable that the insured was led to believe and understand that the lumber in the sheds was insured, and that the lumber, as piled, conformed to the stipulations of the policy. The words of the contract must be taken in the sense in which

they were understood by the person to whom they were addressed —that is, in the sense in which the promisee understood them.  *Greenwood* v. *Ligon*, 10 Smed. & M., 615.   If an exception in a policy be capable of two interpretations equally reasonable, that must be adopted most favorable to the insured. 22 Penn., 351; 20 Am. St. R., 826; 40 *Ib.*, 405.   It is now settled, and by almost unanimity in the late decisions, that where an agent of an insurance company thoroughly examines the risk, and understands there is something connected with it that violates the conditions of the policy, and knows the assured intends to act in a certain way, yet makes no objection, but issues the policy and accepts the premiums, the company must be held to have waived the conditions.   2 Biddle on Insurance, § 1060.   This is the law also announced by May and Ostrander in their works on insurance.   It hardly seems necessary to cite authorities from other states, but we refer to 3 Wis., 254; 10 La. Ann., 737; 65 Iowa, 308; 68 *Ib.*, 737; 87 Mo., 62; 54 Vt., 223; 52 Ark., 11; 76 Cal., 50.   Even Massachusetts, which formerly held to a different rule, has relaxed.   135 Mass., 248. And so in Pennsylvania.   120 Penn., 504.   But the matter is set at rest in this state by *Mitchell* v. *Insurance Co.*, *ante*, p. 53.   See, also, *Insurance Co.* v. *Gibson*, *ante*, p. 58; *Insurance Co.* v. *Sheffy*, 71 Miss., 919.   There is no real distinction between promissory and affirmative warranties.   1 May on Insurance, § 152; 1 Biddle on Insurance, § 565.

2.  The burden of proof is upon the defendant.   The citations in the brief of appellant do not ·bear out their contention. Biddle, in his work on Insurance, § 557, says that the authorities as to this are greatly divided, and he classes Mississippi with those states which place the burden on the defendant. Certainly it should be on the defendant where, as here, it sets up the breach by a special plea, concluding with a verification.   See *Insurance Co.* v. *Brown*, 57 Miss., 308.   There can be no difference, in reason, between life and fire insurance in this respect.   154 Mass., 77; 144 *Ib.*, 572; 51 Minn., 621;

84 Cal., 570; 75 *Ib.*, 635; 37 S. C., 417; 142 N. Y., 505; 76 Va., 575; 32 Gratt., 616; 87 Ky., 541; *Insurance Co. v. Gridley*, 100 U. S., 614; *Insurance Co.* v. *Ewing*, 92 *Ib.*, 377.

We think the instruction as to the burden of proof subject to criticism in requiring the minds of the jury to be satisfied to a reasonable degree of certainty; but this error is wholly immaterial. Even if the entire instruction were erroneous, as placing the burden improperly on the defendant, it would not be reversible error, because the evidence is not conflicting, and it is immaterial where the burden of proof rests.

Argued orally by *M. Green*, for appellant, and *C. H. Alexander*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

So far as the contention about the promissory nature of the warranty is concerned—that "a continuous clear space of fifty feet should thereafter [after the date of the policy] be kept between the lumber and any woodworking establishment"—it is settled against appellant, on the case made by this record, by the cases of *Mitchell* v. *Mississippi Home Insurance Co.*, *ante*, p. 53, and *Rivara* v. *Insurance Co.*, 62 Miss., 720. In the last case the court says: "A condition in an insurance policy prohibiting the use or deposit of certain articles may be waived, and is waived, if the agent taking the insurance knew at the time it was taken that the prohibited articles were used or kept, or were to be used or kept, on the premises."

By the eighth instruction given for the plaintiff (appellee), the court told the jury that "the burden of establishing that there was a breach of the warranty of the policy for the maintenance of a continuous clear space of fifty feet, etc., was upon the defendant." We think this is a correct announcement of the law, according to the latest and best considered cases. It is true Mr. Biddle, in § 557 of vol. 1 of his valuable work on Insurance, states that "the burden of performance is on the insured," on the ground that a "warranty is in the nature," in

insurance law, "of a condition precedent." He refers to the
decisions in certain states and the decisions of the United States
supreme court holding the contrary view, as holding that view
for reasons of "convenience," etc.   But, in §§ 1247–1250 of
vol. 2, Mr. Biddle abandons this view.   Whilst, in these latter
sections, disposed to put these later cases on the narrow ground
that the burden was held in them, or some of them, to be on
the defendant, if the defendant, not content with the general
issue, set up by special pleas the specific breaches of warranties
on which it relied, for the reason that, having thus specially
selected the breaches relied on, and plead them, the defendant
should prove them as matter of specific defense, he is yet
driven practically to admit that, by the latest decisions, "a
different rule may possibly be said to have been asserted " in
England.   The same observation could well have been extended
to America.   We select only a few out of the multitude of
cases placing the burden upon defendant.   In *Freeman* v. *Trav-
eller's Insurance Co.*, 144 Mass., p. 572—a finely reasoned
case—where the condition, in a life policy, was that the insured
" should use all due diligence for personal safety and protec-
tion," the court point out that, where a clause can be regarded
as a proviso—that is, a stipulation added to the principal con-
tract to avoid the defendant's promise by way of defeasance or
excuse—it is for the defendant to plead it in defense and sup-
port it by evidence; but if, on the other hand, it is an excep-
tion, so that the promise is only to perform what remains after
the part excepted is taken away, then the plaintiff must negative
the exception to establish a cause of action, and then proceed to
say: " The condition we are considering is essentially an executory
stipulation in the form of a condition that the insured shall use
all due diligence for his personal safety and protection, and it
is the breach of this condition by the insured which the defend-
ant sets up as a defense.   We are not aware that it has ever
been held that the introduction of the words we have quoted,
or of other similar words, into the principal clause of a policy

of insurance incorporates into this clause the conditions of the policy within the meaning of the rule of pleading we have stated. . . Every case depends upon the nature of the stipulation or condition as well as upon the form of it. This condition does not differ, in its character, from the provision in life insurance policies that they shall be void . . if the assured shall die by his own hand. The burden of proving the breach of such a provision is on the company,'' citing many authorities, among the rest *Grangers' Ins. Co.* v. *Brown*, 57 Miss., 308. The instruction is correct, within this reasoning, as to the rule of pleading discussed, but we prefer to put the correctness of the instruction upon the broader ground announced in *Piedmont, etc., Life Ins. Co.* v. *Ewing*, 92 U. S., 377, followed and adopted in *Grangers' Ins. Co.* v. *Brown*, 57 Miss., 308. As said by that court: ''The number of the questions now asked of the assured in every application for a policy, and the variety of subjects . . which they cover, are such that it may safely be said that no sane man would ever take a policy if proof to the satisfaction of a jury of the truth of every answer were made known to him to be an indispensable prerequisite to payment. . . On the other hand, it is no hardship that, if the insurer knows or believes any of these statements to be false, he shall furnish the evidence on which that knowledge or belief rests. He can thus single out the answer whose truth he proposes to contest, and, if he has any reasonable grounds to make such an issue, he can show the facts on which it is founded.''

There can be no difference, in principle, as to the application of this reasoning between life and fire policies, written as the one in this record, and as they are now usually written. The same rule is emphatically declared in *Blasingame* v. *Home Ins. Co.*, 75 Cal., 633, and *Portsmouth Ins. Co.* v. *Reynolds*, 32 Grattan, 613, both fire insurance cases. What is said in *Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala., 467, of life insurance policies, is perfectly applicable to fire insurance policies,

and we quote it to approve it: "The rapid growth of the business of . . insurance in the past quarter of a century, with the tendency of insurers to exact increasingly rigid and technical conditions, and the evils resulting from an abuse.of the whole system, justify, if they do not necessitate, a departure from the rigidity of our earlier jurisprudence on this subject of warranties, and such is the tendency of the more modern authorities "—language finding its echo in *Miller* v. *Insurance Co.*, 31 Iowa, 216.

If this instruction be subject to criticism by reason of the phrase that the "minds of the jury should be satisfied to a reasonable degree of certainity," it is certainly not a case of reversible error.

We have "waded wearily" through the sixty-five pages of pleading. We have declarations original and amended, the plea of the general issue and seven further and special pleas, joinder of issue on the general issue, demurrer to further third plea, two replications to the further first plea, one to the further second plea, three replications to defendant's further fourth plea, two replications to defendant's further fifth plea, and two to the further sixth plea, and replication to the defendant's further and seventh plea. Then follow demurrers—demurrer to plaintiff's first replication to defendant's sixth plea, and to plaintiff's first replication to defendant's further first plea, and also to plaintiff's second replication to defendant's further first plea, and so on for ten pages of the record; then we have an amended replication to defendant's further fourth plea, and a demurrer thereto, after which, in regular order, come rejoinders, seven in number, and finally the court sustained "the demurrer of plaintiff to defendant's rejoinder to plaintiff's amended replication to defendant's further fourth plea."

What is said in *Scales' Case*, 71 Miss., 978, fits in here perfectly. The parties got at issue at last, and the controverted point is the point herein discussed and disposed of. We find no reversible error, and the judgment is       *Affirmed.*