| | |
|---|---|
| 83 | 721 |
| c91 | 362 |

| | |
|---|---|
| 83 | 721 |
| 91 | 359 |

## YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY *v.* SARAH J. HUMPHREY.

1. RAILROADS. *Injury to passenger. Mixed train. Evidence. Notice of character of service.*

Evidence that plaintiff had been told that the train was a mixed one, composed of freight and passenger cars, and that the track was rough, so as to make it dangerous to stand or walk in the aisle of the car, is admissible in evidence in an action by her against the railroad company for injuries which she claims to have suffered from being thrown down while standing in the aisle by a violent jolt of the car in switching.

---

Syllabus.

---

2. SAME. *Assumption of risk.*

A passenger who takes passage on a mixed train assumes all the inconveniences and risks usually and reasonably incident to transportation on such trains.

3. SAME. *Degree of care. Contributory negligence.*

The same degree of care is demanded by law of the railroad company in the carriage of passengers on mixed as upon regular passenger trains; but acts by a passenger on a regular passenger train which would not constitute contributory negligence might constitute such negligence if performed on a mixed train.

4. SAME. *Contributory negligence generally for jury.*

When contributory negligence is pleaded as a defense, its absence must be quite obvious to all reasonable minds to warrant an instruction denying the defense.

5. SAME. *Kicking switch. Code 1892, ¿ 3548. Municipal limits.*

Contributory negligence of the plaintiff is a defense to an action for injuries inflicted by a kicking switch made in the country, since Code 1892, § 3548, denying such defense, applies only to such switches made within the limits of a municipal corporation.

6. SAME. *Presumption of negligence. Code 1892, ¿ 1808. Not applicable to passenger.*

Code 1892, § 1808, declaring that, in all actions against railroad companies for damages to persons or property, proof of injury inflicted by the running of locomotives and cars shall be *prima facie* evidence of want of reasonable care, does not apply to a suit for injuries to a passenger.

7. SAME. *Coupling cars. Res ipsa loquitur. Instruction.*

Where a passenger claims to have been injured, while on a car, by the violence of the coupling with another car, but there was no injury to the cars, and it was denied that it was with more force than was necessary to effect the coupling, it is error to instruct that from the mere happening of an injurious accident, a presumption of negligence arises *prima facie* and throws the *onus* of showing that it did not exist on the carrier.

8. SAME.

Injury to a passenger from a coupling made in an ordinary manner does not justify an inference of negligence on the part of the railroad company.

9. PLEADINGS.    *Notice under general issue.    Code* 1892, § 686.    *Counter notice.*

Where to a declaration the defendant has pleaded the general issue, and, under Code 1892, § 686, authorizing such procedure, given notice of a special defense, the plaintiff may:

(*a*) Fail to reply to the notice and test the sufficiency of the defense by objecting to defendant's testimony to prove it when it is offered; or

(*b*) Give a counter notice, provided for by the code section, setting out any special matter relied upon in avoidance of the defense set up in defendant's notice.

FROM the circuit court of Leflore county.

HON. A. McC. KIMBROUGH, Judge.

Mrs. Humphrey, appellee, was plaintiff, and the railroad company, appellant, defendant, in the court below. From a judgment in the plaintiff's favor, defendant appealed to the supreme court. The opinion states the case.

*Mayes & Longstreet* and *J. M. Dickinson,* for appellant.

The declaration does not allege, nor is it proven, that the kicking switch was made in a municipality or made over any crossing.

The uncontradicted evidence shows that this was a mixed train, with two passenger coaches and the residue of the train freight cars.

It is perfectly manifest that the plaintiff, when she took the train, was aware of the fact; and she herself expressly admits that she knew that the road was a new road; and she was traveling over it notwithstanding.

The court below tried this case, manifestly, on the erroneous theory that the fact that the train was a mixed train was irrelevant and immaterial; but such is not the law. 4 Elliot on Railroads, sec. 1629.

It is generally a question of fact for the jury to determine whether a passenger is guilty of contributory negligence in standing up in a passenger car, but to voluntarily and unneces-

sarily stand up in a freight car, which is more liable to sudden jerks, has been held to be negligence as matter of law." *Harris* v. *Railroad Co.,* 89 Mo., 233; *Smith* v. *Railroad,* 98 N. Car., 241; *Railroad* Co. v. *Bisch,* 120 Ind., 549; *Moore* v. *Railroad Co.,* 115 Mich., 103; *Steele* v. *Railroad Co.,* 55 Scar., 389.

We call the court's attention to the fact that the plaintiff herself showed that there was no necessary occasion for her standing up in the aisle. She herself stated that she got up to rest herself, and walked in the car a litttle, and stopped in the aisle to talk to a young man and young woman who heard of her being there and came on the car to see her. She shows that she was paying no attention whatever to the switching that was going on, she herself admits that she knew it was a new road, and she is chargeable, therefore, with knowledge that as such new road it was rough. Under the foregoing decisions, being injured under those circumstances, as they expressly hold, she was guilty of contributory negligence, and the defendant should have had a peremptory instruction.

It was certainly error to instruct the jury, as was done in the plaintiff's second instruction, expressly that it was not negligence for her to stand in the aisle of the coach because it was not then moving; and it was also error to refuse the fifth instruction asked by the defendant, to the effect that a passenger on a mixed train is required to be more cautious to avoid accidents and injuries than a passenger on a regular passenger train.

Mr. Gaddis testified that in that compartment she was leaning out of the door just after the train started, and he caught her to keep her from falling out and assisted her back to her seat and told her it was dangerous for her to be moving about on the train, as it was a mixed train and a very rough road.

This testimony, on the objection of the plaintiff, was excluded. The defendant made repeated efforts to get it in, and still the court excluded it. The reason for the exclusion of it is not stated, but it was manifestly on the ground (for that is the only

reasonable ground on which it could be put) that inasmuch as Mrs. Humphrey was injured while the train was not running, or at least while the coach in which she was travelling was not running, the fact that the road was new and rough was immaterial. In this view, however, or in any view which might have been taken of this testimony leading to its exclusion, the court was manifestly in error.

Here the court not only instructs the jury for the plaintiff as a matter of law, that it was not negligence for the plaintiff to stand in the aisle of this coach because the coach was not then moving, but the court also committed the serious error of taking the whole case from the jury on the subject of contributory negligence by an instruction which eliminated entirely, and ignored wholly, the fact that this was a mixed train liable to sudden jolts and heavy concussions, and the further fact of plaintiff's actual knowledge of the same; and all this in a case where, as shown above, defendant had offered to show that the lady had been warned of the general roughness of the road, and that she knowingly wandered about the train. The jury should have been allowed to judge whether, under the circumstances, she was guilty of contributory negligence.

Unquestionably there is a class of passenger cases where the bare fact of the injury is *prima facie* evidence of negligence and devolves on the defendant the burden of showing reasonable skill and due care. The doctrine is *res ipsa loquitur*. But every case of injury to a passenger does not occupy this attitude. Whether that doctrine is applicable depends on the place and conditions of the injury. It applies where the passenger is injured by the running of the train on which he is embarked, or some injury to that train. It does not apply to a mere jolting coupling of a car which at the time is standing still in a station yard. In that case the plaintiff, even when injured by the jar, must still show negligence. 6 Enc. Law and Procedure, pp. 628, 632.

*S. R. Coleman,* for appellee.

The facts in this case disclose that appellee was a passenger from Grenada to Greenwood on the cars of appellant, the train being one for both freight and passengers, and the only kind run between the above points. When the train arrived at Holcomb station, a few miles out from Grenada, it stopped for about half an hour, engaged in switching some freight cars, leaving the two coaches for passengers on the main line within fifty feet of the depot. Some visitors boarded the train at this point to converse with the passengers, and the appellee, being acquainted with them, was standing in the aisle in conversation with one of said visitors, when a box car heavily loaded was kicked down the main line from a point about one hundred yards distant at the rate of from four to six miles an hour, and down grade, and came in contact with the coaches left standing with such violence as to throw the appellee to the floor, breaking her hip, and after months of suffering developing that she is lamed for life. The jury awarded her damages of just one-half of what she claimed, together with the money expended in trying to be relieved and cured.

Will the court disturb the verdict? It can't be excessive, and about the only serious contention that was made for appellant in the lower court was that appellee was guilty of contributory negligence. If it were negligence to be out of one's seat even when the cars are at perfect rest, would this avoid the responsibility of such gross negligence as all the evidence shows that appellant was guilty of in this case? Under § 3549 of he code of 1892, no contributory negligence can be pleaded under the facts in evidence in this case, and appellee was entitled to have had a peremptory instruction had one been asked.

But leaving that section of the code out, she would have been entitled to the same peremptory instruction but for the remarkable statement of two witnesses that no greater force in coupling was used than was necessary; statements which the jury evidently did not credit and which no sane man could be-

lieve, in view of the consequences, abundantly shown to have resulted from the impact of the cars; so great that a second and less violent attempt at coupling was necessary to be successful. I do not think it necessary to pile up authorities to induce the court to say that the appellant cannot complain of the possible error in that the jury did not award greater damages instead of the amount for which verdict and judgment were rendered.

*W. C. McLean,* on same side.

The conduct of the plaintiff is no defense to the action, because the negligence of the defendant was gross, willful, and reckless. *Railroad Co.* v. *Brown,* 77 Miss., 338; *Railroad Co.* v. *Carter,* 77 Miss., 511; *Stevens* v. *Railroad Co.,* 81 Miss., 195.

The contention on the part of the railroad company was that standing in the aisle on the coach was such conduct as constituted contributory negligence, or that it presented a question of fact to be passed upon by the jury. The plaintiff contended and still contends that the conduct of the plaintiff was such as characterized the actions of persons of ordinary prudence, and that the facts being undisputed it was a question of law for the courts and that the plaintiff, as a matter of law, could not be guilty of contributory negligence. There are two reasons why the plaintiff was not guilty of contributory negligence: In the first place, the injuries received were not the natural and probable result of her conduct; in other words, there was no causal connection between her conduct and the injury, and consequently her conduct did not contribute to the injury. The case of *Howell* v. *Illinois, etc., R. R. Co.,* 75 Miss., 242, is decisive.

If the appellee had been sitting in her seat she would have been injured. True the injury would not have been so severe as it was, but her injuries would have been sufficient to have maintained suit for damages against the railroad company. Every passenger in that coach was more or less injured, not severely, but they received a severe shock such as would support an action

for damages. *Chapman* v. *Copeland,* 55 Miss., 476; *Rose* v. *Co.,* 70 Miss., 725.

The fact that the plaintiff's injuries would not have been as great if she had been sitting in her seat is not at all decisive of the question; that would only go to the question of damages. We submit that the recent and well considered case of *Dewire* v. *B. & M. R. R. Co.,* decided by the Massachusetts court, January 4th, 1889, 148 Mass., 343; s. c., 2 L. R. A., 106, is decisive of the question.

Plaintiff's injuries were not the natural and probable consequences of her conduct, her action could in on way legally have contributed to the injury, but the direct, sole, and proximate cause of the injury was the negligence of the railroad company in permitting the loaded kicked car to come in such violent collision with the car in which plaintiff was a passenger so as to endanger any of the persons in said car. Hutchinson on Carriers (2d ed.), sec. 651; Beech on Contributory Negligence (3d ed.), sec. 7.

The other essential element to constitute contributory negligence is the want of ordinary care to avoid injury from the act of another. The test is whether the person observes ordinary care under the circumstances of the situation, whatever it may be, to avoid harm from the act complained of. What is ordinary care under some circumstances may be gross negligence under different circumstances. The test in all cases is, did the plaintiff at the time, place, and under the circumstances of her then situation do that which a person of ordinary, average prudence would have done under similar circumstances. *Wylde* v. *Railroad Co.,* 53 N. Y., 156; *Willis* v. *Railroad Co.,* 34 N. Y., 670; *Gee* v. *Railroad Co.,* L. R., 8 Q. B., 161.

It is not contributory negligence for a passenger to stand in a crowded street car without objection from the conductor. *Lapointe* v. *Railroad Co.,* 144 Mass., 18; nor for a woman standing in a crowded street car to fail to hold to the overhead straps, where by ordinary convenience she cannot reach and support

herself by them.   *Whipple* v. *Railroad Co.,* 11 Phila., 345;
Wood Railroad Law, sec. 301, says: "A passenger is not bound
to keep his seat during the whole trip."   *Camden Steam Ferry
Co.* v. *Monaghan,* (Penn.), 10 W. N. case, 47.

The court in *Hasie* v. *Railroad Co.,* 78 Miss., 413, held that
even where a party had knowledge that the defendant had been
habitually violating the law, he is not guilty of contributory neg-
ligence, because he did not anticipate the negligent act of the
company at that time; but, upon the other hand, he had a right
to assume that the defendant would not be guilty of negligence.
The plaintiff had the right to act upon the assumption that de-
fendant would not be guilty of negligence, she had the right to
assume, even though she had knowledge that a coupling was
about to be made, that the coupling would not have caused her
to be thrown down or otherwise injured, she could safely assume
that a car would not be kicked against the car occupied by her-
self and the other passengers, she could rest and act upon the
assumption that neither life nor limb of any of the passengers
would be jeopardized by any act of the defendant.

Under § 3557, Code 1892, the degree of care required of rail-
road companies in the operation or management of trains in-
tended for both passengers and freight is the same as that re-
quired   in   the   management   of   their   regular   passenger
trains.   And in most jurisdictions it is held, without the aid of
the statute, that this is the rule, that railroad companies are re-
quired to use the same degree of care in operating freight trains
conveying passengers as in the operation of exclusively passen-
ger trains.   *Railroad Co.* v. *Lippman,* 110 Ga., 665, 50 L. R. A.,
673; *Railroad Co.* v. *Statson,* 93 K. Y., 654; s. c., 40 Am. St.
Rep., 211; *Railroad Co.* v. *Crowder,* 30 So. Rep., 592; *I. C. R.
R. Co.* v. *Bebe,* 66 Am. St. Rep., 258.

And the rule is universally held to be that the highest de-
gree of care and diligence is required of railroad companies in
the operation of their trains and to passengers thereon.   This is
one proposition upon which all of the authorities agree, and no

dissent can be found in any of the authorities since the decision of the supreme court of the United States in *Railroad Co.* v. *Horst,* 93 U. S., 291.

We do not suppose that it will be necessary to argue the question that the railroad company was guilty of negligence if it kicked a loaded car so as to come in contact with a passenger coach without warning to the passengers in said coach, with such force as to reasonably cause passengers in said coach to be injured. This is a self-evident proposition. The authorities go further than the plaintiff asked the court to charge, and it is generally held that it is negligence *per se* in switching a number of heavily loaded cars to kick cars with unusual force against standing cars, causing them to come suddenly and with much force against the car in which plaintiff was injured, whereby he was thrown from his seat. *Quackenbosh* v. *C. & N. R. R. Co.,* 154; *Hassie* v. *N. E. R. R. Co.,* 12 Am. & Eng. R. R. Co., 3; *Lakin* v. *O. P. R. R. Co.,* 347, Am. & Eng. R. R. Cas., 500; *Bartholomew* v. *N. Y. C. & H. R. R. Co.,* 27 Am. & Eng. R. R. Cas., 352; *F. C. & P. R. R. Co.* v. *Mooney,* 12 Am. & Eng. R. R. Cases, 733.

Iowa Dec., 15 (1887); s.c., 34 Am. & Eng. R. R. Cas., 546; Beech on Contributory Negligence, sec. 217, 121 Fed. Rep.,

Argued orally by *Edward Mayes,* for appellant, and *W. C. McLean,* for appellee.

TRULY, J., delivered the opinion of the court.

The declaration in this case avers that the plaintiff, while a passenger on appellant's passenger train, and while on her part "in the exercise of due care," was injured by reason of certain box cars being violently switched, by means of a "kicking switch," against the coach, in the aisle of which she was standing, the coach at the moment of the collision being stationary; that the collision was unusually violent, so that she was thrown to the floor and sustained serious and permanent personal in-

juries; and that the collision and injuries were caused by "reason of the careless and negligent act of the defendant and its servants." Appellant filed the general issue, and, as provided by § 686, Code 1892, gave notice of affirmative matter in defense of the action; that it would prove "that plaintiff was injured on a mixed train at Holcomb while said train was switching, and while plaintiff was standing in the aisle of the car conversing with an acquaintance; and that plaintiff was guilty of contributory negligence in using the aisle of the car at a time and place and for a purpose for which it was not intended." Plaintiff's statement was that she boarded the train at Grenada *en route* to Greenwood, and that when the train reached Holcomb she got up to rest herself and walk in the car a little; that she had some conversation with certain acquaintances whom she met at that place; and that while standing in the aisle, talking, an unusually heavy shock was felt, caused by the collision of certain box cars against the coach in which she was standing, whereby she was thrown to the floor and sustained the injuries stated in the declaration. She further testified that she did not know that this was a mixed train; that she did not know for what purpose the train had stopped so long at Holcomb, and that she did not know that the other portion of the train was then engaged in switching, and that she had no warning or notice of the approach of the car; and that this was the most severe collision that she had ever experienced after many years of railroad travel. On behalf of the defendant it was offered to be proven by the baggage man and conductor that before reaching Holcomb, the scene of the injury, the plaintiff had been notified by the baggageman "that it was dangerous to be moving about on the train, as it was a mixed train, and that it was a rough road." To this testimony an objection made by counsel for appellee was sustained, and to that ruling an exception was reserved.

On behalf of the appellee, among others, instruction No. 2 was given, which is as follows: "The court instructs the jury that it is not negligence for a passenger to stand in the aisle of a

passenger coach while said coach is not moving; and if the jury believe from the testimony that after the coach reached Holcomb, and while it was standing still, one or more acquaintances of the plaintiff entered the coach in which plaintiff was a passenger, and that plaintiff then arose from her seat to speak and to converse with said acquaintances, and that while standing in the aisle of said coach conversing with said acquaintances she was injured by the contact, without being warned of said collision between the coach in which she was standing and other cars of the same train, then the plaintiff was not guilty of contributory negligence." It is apparent from a casual reading of this instruction that it does not correctly state a portion of the testimony. There is no pretense in the testimony of the appellee herself "that she then arose from her seat to speak and to converse with said acquaintances." She does not contend that she arose from her seat for any purpose other than as stated in reply to a question upon cross examination: "I did not leave my seat on account of her coming on, at all. I got up to rest myself, as I had been traveling nearly all day, and she came aboard the train." It is one thing for a passenger, for some purpose incident to traveling, or some necessity existing at the time, to leave her seat, and quite another proposition for a passenger to use the aisle of a car for the purpose of conversing with visitors. We do not intend to intimate that any passenger on a passenger train may not at any time leave his seat for any purpose necessary to the pleasure of traveling or his own convenience, when he has no reason to apprehend danger, without being guilty of negligence; and, while this expression in the instruction now under review is inaccurate, it alone constitutes no ground for reversal. But a more serious objection is urged to this instruction. It stated, as a matter of law, that the acts and conduct of the plaintiff at the time of the injury could not be considered by the jury as constituting contributory negligence on her part. In legal effect, it was a peremptory instruction to the jury that the plaintiff was not, under the facts of the case, as disclosed by the

record here, guilty of contributory negligence. Can this ruling of the court be sustained?

It is undoubtedly true that, as carriers of passengers, the duty of exercising the utmost care and diligence is devolved upon railroad companies. It is also true that the same degree of care, in this state, is incumbent upon them in the transportation of passengers upon mixed trains as upon regular passenger trains. But it does not follow that, because the same degree of care is demanded by law of the railroad companies, what would be contributory negligence on the part of a passenger on a regular passenger train might not constitute contributory negligence on a mixed train, on a new and rough road, under very different circumstances. The carrier owes the same degree of care to the safety of passengers on its mixed trains, and is liable to them for any negligent violation of its duty; but at the same time the passenger who voluntarily takes passage on a mixed train must be "deemed to assume all the inconveniences and risks usually and reasonably incident to transportation or travel upon such." Elliott on Railroads, p. 2553; *Central of Ga. R. R. Co.* v. *Lippman,* 110 Ga., 665, 36 S. E., 202, 50 L. R. A., 673; *Lane* v. *Spokane Falls. Northern Ry. Co.* (Wash.), 57 Pac., 367, 46 L. R. A., 152, 75 Am. St. Rep., 821; *Fisher* v. *Southern Pac. R. R. Co.* (Cal.), 26 Pac., 895. To the passenger on regular trains or mixed trains the carrier owes the utmost care in his transportation, but the passenger's contributory negligence will defeat recovery in an action based upon the mere negligence of the carrier. The passenger on a regular freight train can only recover for the "gross negligence" of the carrier.

This case, according to the theory of the appellant, was this: Plaintiff, an elderly lady, riding on a mixed train, consisting of both freight and passenger cars, had already exposed herself unnecessarily to danger; had been conducted to a seat; told that it was a new and rough road, a mixed train, and therefore liable to receive the ordinary jolts and jars necessarily incident to the switching of freight cars, and there was danger of her being

hurt by moving about on the train; still, after the warning, she stands in the aisle of the car while the other portion of the train is engaged in switching, to which, as she states, "I never watched the engine, I paid no attention at all to it," when, by an ordinary switch, made in the usual way, she is thrown to the floor and injured, when, had she used her sight and hearing, she would have noticed the switching, and, by retaining her seat, would have escaped injury. If this state of case had been made would the court have been authorized in instructing the jury peremptorily that the acts and conduct of the plaintiff did not constitute contributory negligence? Contributory negligence is simply want of ordinary care in the situation. *R. R. Co.* v. *Jones,* 73 Miss., 110, 18 So. Rep., 684; *V. & M. R. R. Co.* v. *McGowan,* 62 Miss., 682, 52 Am. Rep., 205. In *Bell* v. *Southern Ry. Co.* (Miss.), 30 So. Rep., 821, Whitfield, C. J., says: "Whether the company was guilty of negligence, and whether he himself was guilty of contributory negligence, were questions of fact which a jury should have passed upon. So many questions are integrated usually into the solution of the question of negligence—it is so necessary to carefully examine all the circumstances making up the situation in each case—that it must be a rare case of negligence which the court should take from a jury." And this statement is quoted and approved by Calhoon, J., in *Stevens* v. *R. R. Co.,* 81 Miss., 195, 32 So. Rep., 311, and he adds in the same connection: "A judge at his desk, whose duties seclude him very much, and train him to habits of careful deliberation, is not nearly so competent to determine what a man of usual and ordinary prudence might do under given circumstances as a jury from the body of the people. Contributory negligence, as a defense, must be quite obvious to all reasonable minds, to warrant its announcement as matter of law." We again approve this as a correct announcement of the law, but the correlative proposition is equally as true: That the absence of contributory negligence, when specially pleaded as a defense, must be quite obvious to all reasonable minds, to warrant the withdrawal of

the questions from the consideration of the jury.   In actions founded upon mere negligence of carriers, when contributory negligence is presented as a defense by special plea, the question should not be taken from the consideration of the jury unless there is an absence of all testimony tending to sustain the plea. *Tribette* v. *Railroad Co.,* 71 Miss., 212, 13 So. Rep., 899; *Railroad Co.* v. *Boehms,* 70 Miss., 11, 12 So. Rep., 23.   And in *Railroad* v. *Whitfield,* 44 Miss., 466, 7 Am. Rep.. 699, the rule is thus announced: "When the gist of the action is negligence, the question whether the defendant has been negligent so as to subject him to liability, and whether the plaintiff has been negligent so as to exempt the defendant from liability, is one of fact for the jury, under the instructions of the court as to the applicable principles of law."   Says Beach in sec. 450 of his work on Contributory Negligence: "In general, it cannot be doubted that the question of negligence is a question of fact, and not of law. Whenever there is any doubt as to the facts, it is the province of the jury to determine the question, or, whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury.   It belongs to the jury not only to weigh and to find upon the questions of fact, but to draw conclusions, as well, alike from disputed and undisputed facts."   *Barden* v. *Railroad,* 121 Mass., 426; Elliott, Railroads, 1633.

It is earnestly insisted that this reasoning does not apply to the position of appellee at the time of the accident, for the reason that she did not know that she was riding on a mixed train and over a rough road, or that her movements might be attended by danger.   This brings up the exception reserved by the appellant to the ruling of the court in excluding from the jury the testimony which would prove that appellee was advised of the very facts, the ignorance of which she now pleads as her protection; and this argument on behalf of appellee is of itself, to our mind, an admission of the error of the court in excluding

the testimony of the notice given to Mrs. Humphrey by the baggageman and the conductor.

Again, it is urged by appellee in defense of this instruction that, even though the instruction may announce an incorrect proposition of law in excluding from the jury the consideration of the question of contributory negligence on the part of the appellee, for the reason stated in the instruction, yet nevertheless the instruction ought to be upheld, because its conclusion is right upon another ground. So it is contended that even conceding that the action of the appellee in using the aisle of the car as a promenade or reception room, under the facts of this case, and in view of her knowledge that it was a mixed train, might constitute contributory negligence, still this should not be allowed to prevail the appellant, because the servants of the appellant were guilty of gross negligence, and contributory negligence of the plaintiff would not, even if proven, be a defense under such circumstances. This proposition is manifestly true, as an abstract statement of law, but there are several reasons why it cannot avail appellee upon the record made by the pleadings and proof in this case. The declaration does not aver wanton or gross negligence on the part of the railroad company, and states no facts from which gross negligence can be, as a matter of law, logically deduced. It charges that plaintiff, while in the exercise of due care herself, was injured by reason of the "careless and negligent act of the defendant and its servants." And the "careless and negligent act" complained of and set out in the declaration was a collision of violent and unusual force between two cars of the same train, caused by a "kicking, running, and flying switch." Had this kicking switch been made in a municipality it would, by virtue of express statutory provision (§ 3548, Code 1892), have rendered the railroad company liable in damages, "without regard to the mere contributory negligence of the party injured." But occurring not in a municipality, but in the country, the common law, and not the statute, applied. Before the enactment of this statute any contributory negligence

was a defense, no matter where the kicking switch occurred. Now contributory negligence is a defense only when the kicking switch is made outside a municipality.   And the reason and wisdom of the legislation are obvious.  *Pulliam* v. *R. R. Co.,* 75 Miss., 27, 23 So. Rep., 359; *R. R. Co.* v. *Kerl,* 77 Miss., 736, 27 So. Rep., 993; *Ry. Co.* v. *Jones,* 73 Miss., 110, 19 So. Rep., 105.   Contributory negligence of the plaintiff was therefore a complete defense to the case charged against the defendant by her declaration.   But as contributory negligence is an affirmative defense, it could only be interposed by the defendant ₁by special plea, or notice under § 686, Code 1892.   *McMurtry* v. *R. R. Co.,* 67 Miss., 601, 7 So. Rep., 401; *Vicksburg* v. *McLain,* 67 Miss., 4, 6 So. Rep., 774.   This the defendant did by giving special notice with its plea of the general issue.   Under this state of pleadings the plaintiff had two courses open—either not to reply to the notice, and test the sufficiency of the defense by objecting to the testimony when it was offered, or, if she intended to rely upon the ground that, though guilty of contributory negligence, this would not defeat her recovery, by giving the counter notice provided for by the code section referred to, setting out the "special matter which she intends to give in evidence in denial or avoidance of such special matter so given notice of by the defendant."   Appellee adopted neither course.   No counter notice was given, and no objection was made to the testimony offered, as tending to prove the special matter set out in the notice of defendant, and upon which it relied to sustain its plea of contributory negligence on the part of the plaintiff, viz.: "In using the aisle of said car at a time and place and for a purpose for which it was not intended."   The question of willful wrong or gross negligence was not, therefore, raised by the pleadings.   The wording of the instruction shows conclusively that it was framed upon no such theory.   Again, assuming that, under the pleadings, plaintiff could have relied on the principle of law that contributory negligence on the part of plaintiff does not bar a recovery when defendant has been

guilty of gross negligence or willful wrong, yet in no view of the case made by this record was the court authorized to instruct the jury, as a matter of law, that the appellant or its servants in charge of the train were guilty of gross negligence. The most that can be said is that upon this point there was marked and sharp conflict of evidence. It is true that appellee, and some other witnesses in her behalf, testified that it was an unusually severe collision; but one of the witnesses introduced by appellee, and many introduced by the appellant, testified just as positively that there was nothing unusual in the manner in which the switch was made, and that the car was not moving with unusual' speed, and that the collision was not in any sense a violent one. For these reasons, it is manifest that the instruction cannot be upheld upon the ground stated.

Where the defendant, by special plea or notice, sets up, as an affirmative defense, contributory negligence on the part of plaintiff, if plaintiff expects to avoid the plea by proving the gross negligence of defendant as an answer to the contributory negligence of plaintiff, this affirmative matter must be also properly pleaded; and, when at issue and material, the question of the mere negligence or the gross negligence of defendant and contributory negligence of the plantiff should be, under proper instructions, submitted to the decision of the jury.

We are of the opinion that the court erred in excluding the testimony of the notification to appellee as to the nature of the road and the character and description of the train, and the fact that it was dangerous for her to be moving around on the train. This testimony was most vital to the defense interposed under the special notice filed with the plea of the general issue. We are further of the opinion that the instruction now under review was imperfect, in that it incorrectly stated the reason for which appellee left her seat in the coach, and it was fatally erroneous in peremptorily instructing the jury that appellee was not guilty of contributory negligence. In our judgment, on the case made

by this record, this question ought to have been submitted to the consideration of the jury.

By the third instruction granted for the plaintiff, the court told the jury that if, while she was a passenger, "she was injured by the running of the cars of the defendant, then this was *prima facie* evidence of negligence on the part of the defendant, and the burden of proof is on the defendant, from all the evidence in the case, to exonerate itself from liability." This instruction was manifestly based upon § 1808 of the code of 1892, which provides: "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the comapny in reference to such injury." In our opinion, this section has no application to the case made by the record here. It was expressly decided by this court in *Railroad* v. *Trotter*, 60 Miss., 442, that § 1059 of the code of 1880 was not applicable in cases of suits by persons standing in a relation of contract with carriers. Section 1808 of the present code is a transcript of that provision. It is argued by counsel for appellee that the language employed in that decision was merely the dictum of the organ of the court. This, if true, might avoid the ruling, but is no answer to the logic of the reasoning employed. It is there said: "Section 1059 of the code of 1880 is not applicable in cases of suits by persons standing in a relation of contract with carriers. By its terms it applies only when the injury is caused 'by the running of the locomotive or cars of such company,' and in such cases proof of injury is *prima facie* evidence of the want of 'reasonable skill and care.' Shippers of goods are not required to show any negligence on the part of the carrier to entitle them to recover for damage done to goods, and passengers in suits for injuries to their persons are required to show only an absence of the utmost care and prudence. The words of the statute are appropriate only when considered as referring to suits by persons, neither

shippers nor passengers, when property or persons have been injured. If the legislature had been considering persons contracting with carriers it would presumably have given the same protection to patrons of steamboats as to those of railroads, and, in any event, would not have limited the operation of the statute to cases in which the damage was done by the running of the trains, but would have extended it to any injury, however caused. For these reasons we think the statute does not apply in suits brought by a passenger, and cannot be invoked by the appellee in support of the instruction given in her behalf." This ruling, it is attempted to be shown, was overruled, or at least modified, by the opinion of this court in *Railroad* v. *Conroy,* 63 Miss., 562, 56 Am. Rep., 835. But the two cases are easily differentiated, and the Conroy case is in reality, when analyzed, found to be a reaffirmance of the conclusions arrived at in the Trotter case. Waiving the serious doubt as to whether the words "running of the locomotive or cars" include an injury inflicted by the switching of one car against another when both were part of the same train, and one which was not then running, it is still apparent to our mind that the section was not intended to include injuries to passengers on the train by the operation of which the injuries were inflicted. Section 1808 says that "proof of injury" shall be *prima facie* evidence of the want of reasonable skill and care, but the doctrine of "reasonable skill and care," in its accepted legal meaning, has no application to that degree of care which is required, under the law, of carriers dealing with passengers. "Utmost care and caution" is the accepted term which defines the duty which the carrier owes to its passengers, and it would be an inaccurate employment of a legal phrase to hold that it was intended to make a rule of evidence which is applicable to carriers occupying one attitude towards one class of persons apply to an entirely different class of persons, to whom an entirely different duty was owing. Railroad companies are required to exercise "reasonable skill and care" to prevent injuring persons or animals on their tracks, to prevent setting fire to

property along their rights of way, and similar cases, and proof of injury by running of locomotive or cars is, by virtue of the statute, made *"prima facie* proof of want of such reasonable skill and care." Passengers and shippers of freight are not included in the statute, but have their rights protected by principles of law equally as well settled. This, as we understand it, is the meaning intended to be conveyed by Cooper, J., in the Trotter case, *supra,* and to our mind is the true interpretation of the section. While it is admitted that the Trotter case, by its terms, expressly decided the nonapplicability of § 1808 to suits brought by passengers for injuries suffered, it is also stated that in the Conroy case the court receded from that position. A brief examination of the facts of the Conroy case will show the error of this contention. In the Conroy case the plaintiff was injured while a passenger, by the running of the train, but that injury was caused by a collision of the train with an animal on the track, and therefore, from the nature of the accident, negligence of the carrier was implied, but this was not by reason of the statute, but because the doctrine of *res ipsa loquitur* applied. Section 1808 was designed to meet an entirely different contingency.

There is a large and well defined class of cases in which for injuries to passengers the negligence of the carrier is implied from the mere happening of the accident. In such cases proof of injury to the passenger joined to proof of the accident makes out against the carrier a *prima facie* case of failure to observe that high degree of care required of it under the law, and, if not rebutted, entitles the plaintiff to recover. This rule applies when a passenger train strikes an animal on the track and a passenger is thereby injured, or when the injury results from a collision between two trains on the same track, and other similar instances. And this is the law irrespective of statutory provision, and was the law prior to the adoption of the rule of evidence now embodied in § 1808, Code 1892. *N. O. J. & G. R. R. Co.* v. *Allbritton* (decided in 1859), 38 Miss., 242, 75 Am. Dec., 98

But this rule does not apply to all cases of injuries to passengers, but only to such as are caused by happenings not ordinarily incident to the prosecution of the carrier's business in the customary manner, or by such accidents as do not usually occur without negligence on the part of the carrier. To sustain a recovery it always devolves upon the passenger suing to show negligence on the part of the carrier, but this he may do by direct proof of failure of duty or by showing a state of facts which will justify the legal imputation of negligence. *Stager* v. *Ridge Ave. Pass. Ry. Co.* (Pa.), 12 Atl., 821; *Tuley* v. *Chi., Bur. & Quin. R. R. Co.,* 41 Mo. App., 432; *Burr* v. *Penn. R. R. Co.,* 64 N. J. Law, 30, 44 Atl., 845; *C. & W. I. R. R. Co.* v. *Bingenheimer,* 14 Ill. App., 125; *Ga. Pac. R. R. Co.* v. *West,* 66 Miss., 310, 6 So. Rep., 207. And so the instruction considered in the Conroy case, before cited, was upheld not because the statute had any application, but because the nature of the accident causing the injury therein complained of warranted the imputation of negligence to the carrier under the doctrine therein recognized.

But the third instruction for appellee herein is not warranted by that doctrine. There is no inference of negligence to be drawn from the mere fact of an injury to a passenger unless such injury is caused by an act not necessarily or ordinarily incident to the management of the particular train on which the injury occurred. It is a matter of common knowledge that repeated switching and coupling of cars is necessary in order to transact the business of a local mixed train carrying both freight and passengers. No negligence can be imputed to the railroad company on acount of an injury caused by a coupling made in the usual and ordinary way. The instruction now being considered does not say that the jury must believe that the coupling was made in an unusual manner, or violently or negligently, but imputed negligence to the carrier from the bare fact of injury to the passenger. This was error. The manner in which the coupling was made was one of the vital points at issue, which should have been submitted to the jury. On this point the bur-

den was on the plaintiff to prove that the coupling was negligently made. *Herstine* v. *Lehigh Valley Ry. Co.,* 25 Atl., 104, decided by the supreme court of Pennsylvania, involves the exact questions here discussed, and we adopt from the opinion and headnotes in that case the following as a correct statement: "When a passenger claims to have been injured, while on a car, by the violence of the coupling with another car, but there was no injury to the cars, and it was denied that it was with more force than was necessary to move the springs and effect the coupling, it is error to instruct that from the mere happening of an injurious accident, a presumption of neglect arises *prima facie,* and throws the onus of showing that it did not exist on the carrier."

We do not pass in detail upon the instructions denied the appellant, but the views herein expounded will furnish a guide for the court upon another trial hereof.

*For errors indicated, the judgment herein is reversed, and the cause remanded.*

### SUGGESTIONS OF ERROR.

*W. C. McLean,* for appellee, after the delivery of the foregoing opinion of the court, filed a suggestion of error, urging the following points as error in the opinion of the court:

It was error for the court to hold that under the facts of this case the proof of injury is not presumptive evidence of negligence on the part of the railroad company. While here and there may be found "a stray authority" which holds this doctrine, yet an investigation discloses that the great weight of current authority is to the contrary, headed by the supreme court of the United States. *R. R. Co.* v. *Conroy,* 63 Miss., 563, 56 Am. Rep., 835; Hutchinson on Carriers (2d ed.), secs. 800-802, and authorities cited in notes; *Birmingham R. R. Co.* v. *Hale,* 8 So. Rep., 142, 24 Am. St. Rep., 748; *Gleeson* v. *R. R. Co.,* 140 U. S., 444, 11 Sup. Ct., 859, 35 L. Ed., 458; *R. R. Co.* v. *Gardner,* 114 Fed., 186, 52 C. C. A., 142, 5 Am. & Eng. Enc. of Law (2d

ed.), 624; *Insurance Co.* v. *Farnsworth,* 72 Miss., 555, 17 So.
Rep., 445.

"Quoting from the opinion: 'There is no inference of negligence to be drawn from the mere fact of injury to a passenger unless such injury is caused by an act not necessarily or ordinarily incident of the particular train on which the injury occurred. It is a matter of common knowledge that repeated switching and coupling of cars is necessary in order to transact business of a local mixed train, carrying both freight and passengers. No negligence can be imputed to the railway company on account of the injury caused by a coupling made in the usual and ordinary way.' In answer to this we ask, does an injury usually and ordinarily result from the switching and coupling of cars? If not, then the legal presumption should be that the switching and coupling was negligently done when injury happens.

"In addition to this, we emphasize and accentuate the fact that the coupling in this case was not made in the usual and ordinary way. There is no dispute as to the fact that the coupling was made by a kicking switch. All the authorities agree that the coupling a car by kicking one car against another is *per se* negligence."

TRULY, J., delivered the opinion of the court in response to the suggestion of error.

We have given the two assignments of error suggested the most careful and painstaking consideration, but cannot recede from the position announced in the opinion herein. The weakness of one of the positions of appellee in this suggestion is in assuming that "kicking switches" outside of a municipality are *per se* negligence. Negligence in making a switch consists in the degree of violence with which the coupling is made, and not in the kind of switch which is made. A "kicking switch" outside of a municipality, just as any other kind of a switch, may or may not be negligence, according to the degree of violence

employed; and the degree of violence which will constitute negligence may differ with the varying circumstances of special cases. What would be negligence under one state of facts might be the exercise of due care under other and dissimilar circumstancs. The argument that because appellee was injured by the switch, and because injuries do not "usually and ordinarily" result from a switch made in the "usual and ordinary" manner, therefore the switch must have been negligently made, omits all consideration of the very material question of whether or not the appellant was at the time of injury using the coach in the "usual and ordinary" manner in which passengers are intended to use it; and this question, it is conceded in the suggestion of error, is one proper to be submitted to the consideration of the jury.

The other ground urged in the suggestion of error as to the application of the statutory presumption of negligence is completely answered by the simple statement that the proven facts do not bring this case within the scope of § 1808 of the code of 1892. It might be further said that illustrative cases can be easily imagined, where passengers, employes, licensees, or trespassers might all be injured by the same occurrence, and yet as to each a different legal principle prevail. Take the instance of a running train striking a man on horseback on the track, where the man, an employe, and a passenger are all injured at the same moment, and by the same act; yet as to each person injured a different principle of law would control, and the presumption applicable in each case would be founded on a distinct legal theory. That this is so, reference to numerous adjudications of this and other courts will readily prove. With the wisdom of the rule the courts have no concern. That is a question submitted to the legislative department of our government, and to be dealt with in its wisdom and at its pleasure.

*Suggestion of error denied.*